THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.*
SAVIRO LUECHINI, Appellant.

(County Court, Erie County, February, 1912.)

**Vagrants** — Persons leading idle, disorderly and criminal lives, and procedure for their punishment.

> One who stands in the lobby of a theatre with his face painted, clothed as a woman and having on a wig and slippers representing the "White Slave," is not a vagrant within the meaning of section 887 (7) of the Code of Criminal Procedure.

APPEAL by defendant from a judgment of the City Court of Buffalo, convicting defendant of being a vagrant.

Merritt N. Baker, for appellant.

Wesley C. Dudley, district attorney (Clifford McLaughlin, of counsel), for respondent.

TAYLOR, J. The appellant has been convicted in the City Court of Buffalo of being a vagrant, as defined by subdivision 7 of section 887 of our Code of Criminal Procedure, which says: "A person (is a vagrant), who, having his face painted, discolored, covered or concealed, or being otherwise disguised, in a manner calculated to prevent his being identified, appears in a road or public highway, or in a field, lot, wood or inclosure."

Said section 887 defines ten varieties of vagrancy. The general meaning of the word "vagrancy" is well understood; and the whole import of this section, as I read it, is that a person, to be convicted under any of its subdivisions, must be shown to be so situated or so conducting himself as to indicate either that he has no lawful, visible means of support, or that he is a menace to the health, safety or morals of the community in his manner of supporting himself. Said section, which became a law in 1881, was derived from the statutes of 1845 and 1824. The wording of the statute of 1824,

so far as material, is: "All idle persons who, not having visible means to maintain themselves, live without employment; all persons wandering abroad and lodging in taverns * * * and not giving a good account of themselves; all persons wandering abroad and begging * * * shall be deemed vagrants."

Chapter 3 of the act of 1845 is the same as subdivision 7 of the present section 887, under which appellant was convicted, except that it provides that it must further appear that the accused person, after arrest, "cannot give a good account of himself." These last words, while not found in subdivision 7 of section 887, appear in subdivision 6; and the theory of the whole section seems to me, as I say, to import non-self-support or support by means that are improper and unlawful. Mere masquerading is not sufficient; and I cannot conceive that our Legislature, in the exercise of its police power, intended to declare such an act *malum prohibitum,* *i. e.,* criminal in itself without proof of specific criminal intent.

There is no testimony in the case at bar that this appellant was without proper means of support, or that he was in any way unable to account for himself, or that he was menacing the public health, safety or morals. To be sure, there is testimony that he was in front of some theatre and that he "represented the 'White Slave.'" This is not an attractive expression in these latter days; and, if appellant were convicted under section 70 of the Penal Law of some form of abduction, or under section 1148 of the Penal Law of soliciting for immoral purposes, or of aiding or abetting in the commission of either crime, a different proposition would confront me. However, the sole proof of any materiality is the testimony of Detective Newton, who says he "found this young man in front of the Grand Theatre, 227 Main Street, his face all painted up and this garb on (pointing to women's clothes which were conceded by appellant to have been worn) and this wig on and slippers. * * * his face all painted up and he said he was representing the 'White Slave.' * * * He was in the lobby of the theatre, a depression same as any doorway, in view of the public."

This comes far short, in my judgment, of bringing the appellant within the scope of the section mentioned. Some form of disorderly conduct might have been charged and proved; and, if this show house was producing something unlawful, there was a proper way to put a stop to it. But, under this slight testimony, if this conviction of this young man be allowed to stand, there is no reason why the disguised circus " barker," the midway " ballyhoo," or even the masquerader at the ball could not be convicted of vagrancy under this statute, each for having indulged in his own particular antics; and such a conviction, although perhaps it might be deemed righteous by many, would be going far beyond anything conceived by the Legislature.

There is no " white slavery " crime involved here, nor am I called upon to pass, even incidentally, upon the character of the entertainments furnished by any of our moving picture show houses, for there is no testimony produced on this question. Every law-abiding citizen is entitled to security under the law. Statutes penal in character should be strictly construed in favor of the liberty of the citizen. And, while the hand of the law should fall promptly and fearlessly upon those who transgress its penal prohibitions, still that hand should as surely be withheld, except by way of assistance, from those who are not shown by sufficient proof to have violated the law as written.

I deem it unnecessary to comment on the other points raised by counsel for appellant.

The judgment of conviction is reversed and the fine ordered remitted.

*Judgment reversed and fine remitted.*